IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Dawson Price, *et al.*,
Plaintiffs,

v. Case No. 3:25 CV 2044

Glenmede Trust Company, N.A.,
Defendant.

---

**JOINT LETTER TO THE COURT REGARDING ANTICIPATED MOTION TO DISMISS**

January 30, 2026

The Honorable Jack Zouhary
United States District Judge
Northern District of Ohio, Western Division
1716 Spielbusch Avenue
Toledo, OH 43604

Dear Judge Zouhary:

Pursuant to Your Honor's December 6, 2025 Order, counsel for Plaintiffs and Defendant write jointly to update the Court on the status of discussions regarding Defendant's anticipated motion to dismiss and settlement negotiations.

<u>Good Faith Efforts to Narrow Issues</u>

Both sides have engaged in good faith efforts to comply with the Court's directives. On December 31, 2025, Defendant's counsel provided Plaintiffs with a detailed letter outlining the legal bases for Defendant's anticipated Rule 12(b)(6) motion to dismiss (attached hereto as Exhibit A). On January 22, 2026, Plaintiffs' counsel provided a comprehensive response addressing each of Defendant's arguments (attached hereto as Exhibit B). On January 29, 2026, counsel participated in a telephonic conference to further discuss these issues and explore whether any grounds for dismissal could be narrowed or resolved.

Despite these good faith efforts by both sides, the Parties have been unable to reach an agreement to narrow the issues that Defendant intends to raise in its anticipated motion to dismiss. The Parties' positions on the threshold legal questions remain fundamentally at odds. The Parties respectfully refer the Court to the attached correspondence, which sets forth each side's detailed legal positions.

Settlement Discussions

The Parties also discussed settlement, as directed by the Court. Plaintiffs value their compensatory damages claim in the eight figures. Given Plaintiffs' evaluation of their alleged damages, and Defendant's position that the case should be dismissed on the grounds outlined in its December 31, 2025 letter, the Parties were unable to bridge the gap necessary for substantive settlement negotiations at this stage.

Next Steps

In light of the foregoing, Defendant intends to file a motion to dismiss, addressing the issues outlined in the attached correspondence. The Parties await the Court's guidance on the schedule for such motion practice and are available to participate in a status conference at the Court's convenience.

Both Parties thank the Court for its attention to this matter.

Respectfully submitted,

*/s/ David P. Meyer*
David P. Meyer
Courtney M. Werning
John C. Camillus
Donnell C. Much
MEYER WILSON WERNING CO., LPA
305 W. Nationwide Blvd.
Columbus, Ohio 43215
Phone: (614) 358-3283
Email: dmeyer@meyerwilson.com
Counsel for Plaintiffs

*/s/ Brian P. Nally*
Brian P. Nally
Adam Fried
David Hudson
REMINGER CO., LPA
200 Public Square, Suite 1200
Cleveland, Ohio 44114
Phone: (216) 430-2106
Email: BNally@Reminger.com
Counsel for Defendant

**CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2026, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.

*/s/ David P. Meyer*
David P. Meyer

REMINGER
RESULTS. PERIOD.

Brian P. Nally, Esq.
Direct Dial: (216) 430-2106
Email: BNally@Reminger.com

December 31, 2025

**Via Email:**
David P. Meyer, Esq. - dmeyer@meyerwilson.com
Courtney M. Werning, Esq. - cwerning@meyerwilson.com
John C. Camillus, Esq. - jcamillus@meyerwilson.com
Donnell C. Much, Esq. - dmuch@meyerwilson.com
Meyer Wilson Werning Co., LPA
305 W. Nationwide Blvd.
Columbus, Ohio 43215

**Re:** ***Dawson Price, et al. v. The Glenmede Trust Company, N.A.***
**United States District Court for the Northern District of Ohio**
**Western Division, Case No. 3:25-cv-02044**

Dear Counsel:

Pursuant to Judge Zouhary's direction, the following is an updated description of the arguments we plan to advance in a Rule 12(b)(6) motion to dismiss. We formally request that the Complaint be dismissed by January 30, 2026.

A. Plaintiffs Lack Standing to Bring these Claims

Standing determines "whether a litigant is entitled to have a court determine the merits of the issues presented." *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 1994 Ohio 183, 643 N.E.2d 1088 (1994). "Whether a party has established standing to bring an action before the court is a question of law." *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20, citing *Cuyahoga Cty. Bd. of Commrs. v. State*, 112 Ohio St.3d 59, 2006-Ohio-6499, 858 N.E.2d 330, ¶ 23. To establish standing, the plaintiff must show that they suffered (1) an injury that is (2) fairly traceable to the defendant's allegedly unlawful conduct, and (3) likely to be redressed by the requested relief. *Id.* at ¶ 22, citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992).

Plaintiffs are remainder beneficiaries of five of the six Trusts listed in the Complaint, and current beneficiaries of only one, the 1976 Trust. They have asserted claims that are derivative in nature—meaning, they are suing Glenmede to redress harm done to the Trusts themselves during a period in which they were not current beneficiaries of the Trusts and had no right to Trust proceeds, Trust distributions, or any other aspect of the Trust corpus. In fact, the Plaintiffs were minor children during most of the period discussed in the Complaint and

benefited from the allegedly improper conduct by virtue of their mother receiving distributions from the Trusts for her benefit and that of the Plaintiffs. The Complaint fails to describe any direct harm to the Plaintiffs, any reduction of any *required* distribution or payment to the Plaintiffs, or any other harm suffered by Plaintiffs as remainder beneficiaries (or current beneficiaries in the 1976 Trust). Indeed, the plain language of each Trust confirms that Plaintiffs have never had any current right to income or distributions from any of the Trusts (or any other corpus of the Trusts). In fact, the Trustee has "sole discretion" to handle distributions from the Trusts, was under no *obligation* to make any distributions to any of the Plaintiffs by virtue of the Trusts' use of the work "may" when discussing distributions, was under no obligation to make distributions equal among the Plaintiffs, and therefore Plaintiffs have no legal basis to challenge what distributions, if any, were made to them from any of the Trust:

> (a) During the continuance of the trust for such child, the Trustee may, in its sole discretion, and shall upon the direction of the Advisory Committee, from time to time, pay to or apply to the use of the child for whom such part is being held, or any one or more among such child's issue, if any, such part of the income and/or principal as the Trustee (if acting in its sole discretion) or as the Advisory Committee (if the payment is made pursuant to its direction) deems necessary, advisable or expedient for the care, comfort, support, education, best interests or general welfare of such child or of any one or more among such child's issue, if any. Such payments may be made to or for the benefit of any one or more among such child and issue, if any, to the exclusion of the others and without obligation to make equal payments to any of the others then or thereafter. Income not so paid or applied shall be accumulated and added to principal.

*See* Article II and Article IV of the Trusts. Accordingly, the Plaintiffs do not have standing to challenge how a Trustee handled distributions from the Trust and therefore have sustained no damages.

This exact scenario was discussed in *Godfrey v. Kamin*, 2000 U.S. Dist. LEXIS 18213 (N.D. Ill. Dec. 13). In *Godfrey*, the court analyzed claims brought by remainder beneficiaries of a trust against a former trustee. The beneficiaries were children, and their mother was the trust's sole income beneficiary. *Id*. at *2–3. After the defendant-trustee filed a motion for judgment on the pleadings under Rule 12(c), the court analyzed two questions: "Are plaintiffs suing defendants on behalf of the trust? If so, do plaintiffs have standing to maintain such a suit?" *Id*. at *4. The court held that the plaintiff-beneficiaries did _*not*_ have standing and granted

the defendant's motion. Relying on U.S. Supreme Court authority, the court explained how "a trustee has the exclusive authority to sue third parties who injure the beneficiaries' interest in the trust, including any legal claim the trustee holds in trust for the beneficiaries[.]" Furthermore, a "trustee … has the sole responsibility for determining whether to settle, arbitrate, or otherwise dispose of the claim." *Id*., citing *Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry*, 494 U.S. 558, 567, 108 L. Ed. 2d 519, 110 S. Ct. 1339 (1990) (internal citations omitted); *see also* GEORGE G. BOGERT & GEORGE T. BOGERT, THE LAW OF TRUSTS AND TRUSTEES § 869 (2d ed. 1995) (explaining that the right to sue "in the ordinary case vests in the trustee as representative" and that absent "special circumstances, the beneficiary is not eligible to bring or enforce … causes of action which run to his trustee").

Based on this authority, the court, in granting the defendant-trustee's motion, reasoned that "it is the current trustees that have standing to pursue plaintiffs' claims and, since the current trustees are not parties to the instant lawsuit and since plaintiffs have failed to allege that those trustees have improperly refused or neglected to bring suit or cannot be subjected to the jurisdiction of the court, defendants' motion is granted…" *Id*. at *14. This is precisely why, here, the Plaintiffs do not have standing to bring this lawsuit against Glenmede and why only the Trusts' current trustees would have standing to pursue Glenmede, as a prior trustee, for alleged damage to the Trusts themselves. *See also Firestone v. Galbreath*, 10th Dist. Franklin No. 92AP-159, 1992 Ohio App. LEXIS 5219 (Oct. 6, 1992); *Papps v. Karras*, 6th Dist. Lucas No. L-14-1246, 2015-Ohio-1055 (affirming dismissal because plaintiffs were not *current* beneficiaries).

B. <u>All Claims Are Barred by the February 2025 Settlement Agreement, Res Judicata, and Claim Preclusion</u>

The prior settlement between the Trusts and Glenmede in Lucas County Probate Court on December 21, 2021 (the "2021 Lawsuit") prohibits the Plaintiffs from bringing the claims in this case. To this end, First Trust Company, LLC signed the settlement agreement as the Special Fiduciary for the Trusts and released all claims/disputes related to the 2021 Lawsuit, Heartwell Holdings, and administration of "the Trusts." *See* attached.

Moreover, the doctrine of res judicata bars the Plaintiffs from pursuing this second lawsuit against Glenmede. Res judicata applies when there is "'[a] valid, final judgment rendered upon the merits", which acts as a "bar [of] all subsequent actions based upon any claim arising out of the transaction or occurrence that was the subject matter of the previous action.'" *Strode v. Phillips*, 8th Dist. Cuyahoga No. 84838, 2005-Ohio-2827, ¶ 11, *State ex rel. Denton v. Bedinghaus*, 98 Ohio St.3d 298, 301, 2003 Ohio 861, 784 N.E.2d 99, quoting *Grava v. Parkman Twp.*, 73 Ohio St.3d 379, 1995 Ohio 331, 653 N.E.2d 226, syllabus. Thus, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Id*., citing *Trojanski v. George*, Cuyahoga App. No. 83472, 2004 Ohio 2414. A voluntary dismissal of an action with prejudice acts as an adjudication on the merits and bars all future litigation on the rights asserted and on those

that could have been addressed in the prior action. *Id.*, citing *Eberhardt v. Illius*, Cuyahoga App. No. 63165, 1992 Ohio App. LEXIS 5964 (Nov. 25, 1992), citing *Horne v. Woolever*, 170 Ohio St. 178, 163 N.E.2d 378 (1959); *see also Thomas v. Freeman*, 79 Ohio St.3d 221, 1997 Ohio 395, 680 N.E.2d 997 (1997); *Tower City Properties v. Cuyahoga Cty. Bd. of Revision*, 49 Ohio St.3d 67, 551 N.E.2d 122 (1990). This doctrine applies when a party could have filed a counterclaim in a prior action, *Horne v. Woolever*, 170 Ohio St. 178, 163 N.E.2d 378 (1959), a permissive (not mandatory) claim in a prior action, *Scott v. Reif*, 659 Fed. Appx. 338, 344–45 (6th Cir. 2016), claims of non-parties whose interests are properly represented, *Hansberry v. Lee*, 311 U.S. 32, 41–44 (1940); *United States v. Staffco Construction, Inc.*, 107 Fed. Appx. 453, 457 (6th Cir. 2004), and claims that a defendant could have brought in a prior lawsuit when the parties' interests are aligned with the plaintiff, *Firestone v. Galbreath*, 895 F. Supp. 917, 924 (S.D. Ohio 1995). Indeed, if the interests of a party named as a defendant coincide with those of the plaintiff in relation to the purpose of the lawsuit, the named defendant must be realigned as a plaintiff. *See U.S. Fid. & Guar. Co. v. Thomas Solvent Co.*, 955 F.2d 1085, 1089 (6th Cir. 1992).

Here, res judicata bars Plaintiffs' claims. Importantly, the Plaintiffs were previously represented by the *same attorney as their mother*, Attorney Kevin Heban, dating back to early 2021. Plaintiffs and their mother filed multiple Applications to Modify the Trusts in *early* 2021 and worked with their mother/her attorney to advance those proceedings. Attorney Heban continued to represent the Plaintiffs in the 2021 Lawsuit and continued to coordinate with Sandra Price, which is clear by the Complaint filed in the 2021 Lawsuit stating that the Plaintiffs were "in agreement with the allegations and relief sought" by their mother. Compl. at ¶ 5. The Plaintiffs—through Attorney Heban—then filed an Answer that admitted the allegations in *every single paragraph of the Complaint*. Regardless of why the Plaintiffs were listed as "defendants" in the 2021 Lawsuit, it is undisputed that their interests were aligned with their mothers and that they advanced the claims in the 2021 Lawsuit through a coordinated effort. Courts analyzing similar situations have looked past technical party designations and, instead, assessed whether the defendant's interests were aligned with the plaintiff's such that res judicata should apply in a subsequent lawsuit. *See e.g. Firestone*, 895 F. Supp. 917, 924 ("the court concludes that plaintiff was a party in the state court action and that his interests were adverse to those of the present defendants so as to permit the application of the claim preclusion branch of res judicata."). Based on the foregoing, res judicata applies because (i) Plaintiffs were parties to the 2021 Lawsuit, (ii) were adequately represented by counsel (and the same counsel as their plaintiff-mother), (iii) expressly supported and agreed with the claims advanced by their mother/Plaintiff Sandra Price in the 2021 Lawsuit against Glenmede, and (iv) the 2021 Lawsuit resulted in a final judgment on the merits through the settlement and dismissal *with prejudice*. Plaintiffs could have easily asserted additional claims against Glenmede consistent with those that are the subject of their current Complaint. Having failed to do so, Plaintiffs are barred from bringing these claims in a second lawsuit against Glenmede.

Additionally, Plaintiffs' failure to name their mother as a defendant in the Complaint is improper because she is a necessary and indispensable party under Fed.R.Civ.P. 19. *See Carter v. Deutsche Bank Nat'l Trust Co.*, 2017 U.S. App. LEXIS 21398 (6th Cir. Aug. 30, 2017). This deficiency cannot be cured, however, because of res judicata. Plaintiffs were adverse to their mother as "defendants" in the 2021 Lawsuit and any claims against her arising out of allegedly improper conduct as a member of the Advisory Committee and/or for participating in investments or distributions made from the Trusts, were compulsory counterclaims that are now barred in this case. *See Keegan v. Sneed*, 12th Dist. Butler No. CA2000-02-029, 2000 Ohio App. LEXIS 4807, *14 (Oct. 16, 2000); *see also* Compl. at ¶ 57. The same applies to the Plaintiffs' father, David Epstein. He is a necessary and indispensable party because he was a member of the Advisory Committee that directed Glenmede to make the investments at the core of the Complaint. But like Sanda Price, Mr. Epstein cannot be joined in this case because the Plaintiffs were adverse to their father in the 2021 Lawsuit, joined their mother's claims against him in the 2021 Lawsuit (including almost every motion she filed in the 2021 Lawsuit), and are in pending litigation with David Epstein in the 2021 Lawsuit. For these additional reasons, Glenmede plans to seek dismissal of the Complaint under Fed.R.Civ.P. 12(b)(7) for failure to join a necessary and indispensable party.

C. Plaintiffs' Claims are Time-Barred as a Matter of Law

The Ohio Supreme Court has explained that statutes of limitations serve a gate-keeping function for courts by (1) ensuring fairness to the defendant, (2) encouraging prompt prosecution of causes of action, (3) suppressing stale and fraudulent claims, and (4) avoiding the inconveniences engendered by delay; specifically, the difficulties of proof present in older cases. *Doe v. Archdiocese of Cincinnati*, 109 Ohio St. 3d 491, 2006-Ohio-2625, 849 N.E.2d 268, ¶ 10.

Under Ohio law, the relevant statute of limitations for breach of trust claims is R.C. 5810.05, which provides in relevant part:

> (A) A beneficiary may not commence a proceeding against a trustee for breach of trust more than two years after the date the beneficiary, a representative of the beneficiary, or a beneficiary surrogate is sent a report that adequately discloses the existence of a potential claim for breach of trust and informs the beneficiary, the representative of the beneficiary, or the beneficiary surrogate of the time allowed for commencing a proceeding against a trustee.

*Hammon v. Huntington Nat'l Bank*, 2018-Ohio-87, ¶ 66, 102 N.E.3d 1248 (8th Dist.). Furthermore, R.C. 5810.05(C) states:

> If division (A) of this section does not apply, notwithstanding section 2305.09 of the Revised Code, a judicial proceeding by a beneficiary

> against a trustee for breach of trust must be commenced within four years after the first of the following to occur:
> (1) The removal, resignation, or death of the trustee;
> (2) The termination of the beneficiary's interest in the trust;
> (3) The termination of the trust;
> (4) The time at which the beneficiary knew or should have known of the breach of trust.

Applying the above statute, the court in *Hammon* granted a motion to dismiss claims of negligence, fiduciary duty, civil conspiracy, and conversion asserted by beneficiaries of a trust against a trustee. The court found that the beneficiaries knew of the alleged misconduct when they were told that the investments "had not performed as anticipated" in November 2009 but did not file their lawsuit until more than four years later, on February 20, 2014. The Complaint in this case presents similar facts.

First, the Plaintiffs' participation in the prior proceedings to modify the 1991 Trust, 1993 Trust, 1996 Trust (Non-GST Exempt), and 1996 Trust (GST Exempt) clearly demonstrates that Glenmede had been removed as Trustee and was replaced by Peak Fiduciary more than four years before the filing of the Complaint in this case. Indeed, the filings submitted to the Lucas County Court of Common Pleas state that Peak Fiduciary, LLC was the current Trustee of the foregoing four Trusts as of April 26, 2021. For the two remaining trusts at issue in the Complaint, Glenmede was removed as Trustee pursuant to a Trustee Succession Agreement dated November 25, 2019 and Resolutions of the Advisory Committee dated December 16, 2019. Plaintiffs, however, did not file their Complaint in this case within four years from when Glenmede was removed as a Trustee for Trusts, which makes Plaintiffs' claims time-barred under 5810.05(C)(1).

Second, the Complaint admits that Sandra Price filed the "2021 Lawsuit"—in which she complained of investments made in Heartwell Holdings and improper distributions of trust proceeds. *See* Compl. at ¶ 19, 37–66. The Plaintiffs were parties to the 2021 Lawsuit and were "in agreement with the allegations and relief sought" by their mother. Compl. at ¶ 5. Sandra Price and the Plaintiffs were in possession of reports and documents showing the Trusts' investments into Hartwell Holdings (*i.e.*, the Advisory Committee Direction), periodic account statements for the Trusts showing investments and distributions, and other documents/information that formed the basis of the 2021 Lawsuit. As part of the 2021 Lawsuit, First Trust Company, LLC was appointed Special Fiduciary to the Trusts in February 2023—more than two years before the Plaintiffs filed their lawsuit on September 25, 2025—and the Plaintiffs had access to all information about the Trusts, their investments, and their distributions through the appointment of First Trust Company, LLC. This makes the Plaintiffs' claims time-barred in this case as a matter of law. *Hammon,* 2018-Ohio-87; *see also Cundall v. U.S. Bank*, 2009-Ohio-2523, ¶ 21–23, 909 N.E. 2d 1244 (granting a motion to dismiss conversion claim against a former trustee because the claim was time-barred, as trustee's wrongdoing was committed in 1984 and beneficiaries did not file their lawsuit until

2006); *Newcomer v. Nat'l City Bank*, 2014-Ohio-3619, ¶ 19 (dismissing claims brought more than two years after beneficiaries received written account statements). Indeed, the Complaint and its attached Exhibits demonstrate that the claims asserted against Glenmede relate to events between 2006 and 2019, making the breach of trust claims (*i.e.*, Counts One through Eight), breach of fiduciary duty claim (*i.e.*, Count Nine), conversion claim (*i.e.*, Count Ten), and negligence claim (*i.e.*, Count Eleven) time-barred under *either* the two or four year time limitations contained in R.C.5810.05(A), (B), and (C)(4). The Plaintiffs either knew or should have known about the investments made into Heartwell Holdings based on their mother and father expressly directing those investments, based on their mother and father's actual knowledge of those investments, based on the Glenmede statements expressly listing those investments (*e.g.*, the 2012 and 2020 statements are attached to the Complaint as Exhibits K and L), and based on the information that was available to them and their mother and father as members of the Trusts' Advisory Committee. Notably, the four-year statute of limitations for the breach of fiduciary duty claim is *not* subject to tolling by the discovery rule. R.C. 2305.09; *Cleveland Indus. Square, Inc. v. Dzina*, 8th Dist. Cuyahoga Nos. 85336, 85337, 85422, 85423, 85441, 2006-Ohio-1095, ¶ 45, fn. 1; *Helman v. EPL Prolong, Inc.*, 139 Ohio App.3d 231, 249, 2000 Ohio 2593, 743 N.E.2d 484 (7th Dist.2000).

D. All Claims Must be Dismissed Based on the Exculpatory Clauses in all Six Trusts.

Each of the Trusts at issue in this case contains an exculpatory clause, which is tied to the creation of the Advisory Committee. By example, the 1965 Trust created an Advisory Committee and states:

> There is hereby established hereunder an Advisory Committee … which shall have the rights and powers herein set forth. Such rights and powers shall be held by the Advisory Committee in a fiduciary capacity and shall be exercised in all respects as though the same were exercised by trustee hereunder.

*See* 1965 Trust, at Article IV. The Advisor Committee has the authority to direct the trustee to distribute trust funds and to invest/reinvest trust proceeds.

> The Trustee of each of the trusts shall make distributions to beneficiaries in accordance with the directions of the Advisory Committee….
>
> The Trustee of each of the trusts created herein shall exercise its powers of sale, investment, reinvestment, borrowing and voting in accordance with the written directions of the Advisory Committee.

*Id*. at Article IV, Section 1 and 2. The Trusts also explain how the trustee shall not be liable for following any directive made by the Advisory Committee:

> The Trustee shall not be liable for nor charged with any act or thing done or omitted to be done in good faith and upon the direction or with the consent or ratification of the Advisory Committee….

*Id*. at Article IV, Section 2. Importantly, the Trust agreements go further and explain how the trustee, in following direction from the Advisory Committee, need not inquire whether an investment is suitable or prudent, ascertain whether the Advisory Committee is acting prudently in its direction, ascertain whether any directive is a violation of a fiduciary duty, or conduct periodic reviews of the investments authorized by the Committee. *See e.g.,* 1976 Trust**,** at Article IV, Section 7; 1991 Trust, at Article V; 1993 Trust, at Article V; and 1996 Trust, at Article VI.

This trust structure insulates Glenmede from liability when carrying out the directives of the Advisory Committee. Indeed, R.C. 5815.25(C) states:

> If an instrument under which a fiduciary acts reserves to the grantor, or vests in an advisory or investment committee or in one or more other persons, including one or more fiduciaries, to the exclusion of the fiduciary or of one or more of several fiduciaries, any power, including, but not limited to, the authority to direct the acquisition, disposition, or retention of any investment or the power to authorize any act that an excluded fiduciary may propose, any excluded fiduciary is not liable, either individually or as a fiduciary, for either of the following:
>
> (1) Any loss that results from compliance with an authorized direction of the grantor, committee, person, or persons;
> (2) Any loss that results from a failure to take any action proposed by an excluded fiduciary that requires a prior authorization of the grantor, committee, person, or persons if that excluded fiduciary timely sought but failed to obtain that authorization.

Courts across the Sixth Circuit and the State of Ohio have consistently relied upon exculpatory provisions to dismiss claims. *See e.g. Ram Int'l, Inc. v. ADT Sec. Servs.*, 555 F.App'x 493, 503 (6th Cir. 2014) (affirming application of exculpatory clause to limit liability and dismissal of negligence claim); *Goss v. USA Cycling, Inc.*, 2022-Ohio-2500, ¶ 22–37 (8th Dist.) (affirming dismissal of negligence claim based on exculpatory clause); *Newcomer v. Nat'l City Bank*, 2014-Ohio-3619, ¶ 51 (discussing how the parties *agreed* that the trustee's liability was limited to breaches of trust committed in bad faith, in willful default, or in reckless indifference—due to the trust's exculpatory clause).

Similar to the above cases, the allegations in the Plaintiffs' Complaint fall directly within the Trusts' exculpatory clauses. The Complaint alleges that Glenmede failed in its duties as trustee by investing millions of dollars in Heartwell Holdings. But attached to the

Complaint are the Advisor Committee Directions, which direct the trustee to invest up to $20,000,000 into Heartwell Holdings in 2006 ($1,000,000, $3,200,000, 6,800,000, $9,000,000) and expressly state that doing so was "in the best interests of the Trust[s]." *See* Compl., at PageID #: 288–296. The Complaint also shows that in 2017, the Advisory Committee ratified all investments in Heartwell Holdings and the structure of the Trusts as a member of the company. *Id.* at PageID #: 298. This ratification is a separate and distinct reason the Complaint fail as a matter of law. *See Paterson v. Equity Trust Co.*, 9th Dist. Lorain No. 11CA009993, 2012-Ohio-860 (granting summary judgment for a defendant, reasoning that the plaintiff ratified the investment at issue in the complaint). Moreover, for the Complaint to advance a *timely* claim, it would need to specifically identify investments (or distributions) made within two to four years from when the Plaintiffs filed their Complaint—that is, investments made on or after September 25, 2021. The Complaint does not identify any such investments (or distributions) during this period.

E. Additional Arguments for Dismissal

In addition to the above arguments, which should lead to the dismissal of all claims in the Complaint, there are additional arguments that further support the dismissal of Counts Seven, Ten, and Twelve.

a. Count Seven (Breach of Trust) Fails as a Matter of Law

R.C. 5803.13(A)'s express language only requires a trustee to provide reporting to "current beneficiaries":

> A trustee shall keep the current beneficiaries of the trust reasonably informed about the administration of the trust….

R.C. 5803.13(A)(emphasis added); *see also Yeager v. U.S. Bank*, 2021-Ohio-1972, ¶ 12 (1st Dist.).

The Plaintiffs were not "current beneficiaries" while Glenmede was trustee of the Trusts. The 2021 Complaint makes clear that Sandra Price was the "current beneficiary" of all Trusts through 2021. *See* 2021 Lawsuit, Compl. at ¶ 3, 5. In fact, as of the filing of their Complaint, the Plaintiffs are not current beneficiaries of five of the Trusts, *see* Compl. at ¶ 46–47, 60, 61, 66, and the Complaint fails to plead any facts that demonstrate when the Plaintiffs became current beneficiaries of the 1976 Trust or what reports Glenmede allegedly failed to provide after they became current beneficiaries. Accordingly, Count Seven must be dismissed.

b. Count Ten (Conversion) Fails as a Matter of Law

"Money may be the subject of a conversion claim only if identification is possible and there is an obligation to deliver," not just a certain sum of money, but rather "the specific money in question." *Dana Ltd. v. Aon Consulting, Inc.*, 984 F. Supp. 2d 755, 768 (N.D. Ohio 2013); *see also Parlin Fund LLC v. Citibank N.A.*, S.D. Ohio No. 1:13-cv-111, 2013 WL 3934997, *9 (July 30, 2013) (citation omitted); *see also Benchmark Bank*, 2018 WL 527285, at *28 ("[R]ecovery for conversion of money is possible only when specific money is identifiable ('e.g., money in a bag, coins, or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered.')."') (quoting *Haul Transport of VA, Inc v. Morgan*, 2d Dist. Montgomery No. CA 14859, 1995 WL 328995, *4 (June 2, 1995). Thus, "[c]onversion of money occurs only when the money is specifically earmarked, or capable of identification such as money in a bag, coins or notes that have been entrusted to the defendant's care, or funds that have otherwise been sequestered." *Id.*, citing *Macula v. Lawyers Title Ins. Corp.*, 2008 U.S. Dist. LEXIS 90468, 2008 WL 3874686, *5 (N.D. Ohio). The Complaint here makes generic allegations that trust proceeds were improperly invested and distributed and does not identify specific money that was earmarked for the Plaintiffs. Accordingly, Count Ten for conversion must be dismissed.

c. Count Twelve (Unjust Enrichment) Fails as a Matter of Law

An unjust enrichment claim may not exist when there is a valid and enforceable contract between the parties. *Graham v. City of Lakewood*, 2018-Ohio-1850, ¶ 59 (8th Dist.). Here, there was an express agreement governing the trustee services provided by Glenmede and, therefore, Count Eleven must be dismissed.

F. Conclusion

In summary, the Plaintiffs should dismiss their Complaint for the following reasons:

- Plaintiffs lack standing to assert all claims;
- All of Plaintiffs' claims were released by Sandra Price and First Trust Company, LLC through the Settlement Agreement;
- All of Plaintiffs' claims are barred pursuant to res judicata and claim preclusion due to Plaintiffs' active participation in the 2021 Lawsuit and failure to bring claims against Glenmede in that action before a final adjudication on the merits;
- Plaintiffs have failed to join necessary and indispensable parties as required under Rule 12(b)(7);
- All of Plaintiffs' claims are barred by the exculpatory clauses contained in the Trusts;
- Counts One through Eight (breach of trust claims) are time-barred under 5810.05(C)(1) and 5810.05(A)

- Count Nine (breach of fiduciary duty) is time-barred and is not subject to tolling by the discovery rule;
- Count Ten (conversion) is barred based on Plaintiffs' failure and inability to identify any trust assets that were specifically earmarked for them;
- Count Eleven (negligence) is time-barred and barred by the exculpatory provisions contained in the Trusts; and
- Count Twelve (unjust enrichment) fails as a matter of law due to the written contract between Glenmede and the Trusts for the trustee services.

We look forward to receiving your response.

Sincerely,

**REMINGER CO., LPA**

*/s/Brian P. Nally*

Brian P. Nally

BPN/mar
w/enclosures
cc: Adam Fried (via email)

**INDEX OF ENCLOSURES**

1. 2021 Lawsuit – Summons and Complaint
2. 2021 Lawsuit – Answer by Plaintiffs
3. April 26, 2021 Application for Order Approving Modification of Trust (0927)
4. April 26, 2021 Application for Order Approving Modification of Trust (0928)
5. April 26, 2021 Application for Order Approving Modification of Trust (0929)
6. April 26, 2021 Application for Order Approving Modification of Trust (0930)
7. November 25, 2019 Letter to Glenmede re: Removal as Trustee for all Trusts
8. November 25, 2019 Trustee Succession Agreement
9. December 17, 2019 Resolution of Advisory Committee re: Removal of Glenmede as Trustee for all Trusts

Meyer Wilson Werning

**David P. Meyer, Esq. | Lead Principal**

**PHONE** 866.827.6537 | **DIRECT** 614.358.3283
**EMAIL** dmeyer@meyerwilson.com
www.meyerwilson.com | www.investorclaims.com

January 22, 2026

**Via Email Only**
Brian P. Nally, Esq. (bnally@reminger.com)
Reminger Co., LPA
200 Public Square, Suite 1200
Cleveland, OH 44114
BNally@Reminger.com

Re: *Dawson Price, et al. v. The Glenmede Trust Company, N.A.*
United States District Court for the Northern District of Ohio
Western Division, Case No. 3:25-cv-02044

Dear Brian:

We write in response to your December 31, 2025 letter, outlining Glenmede's anticipated Rule 12(b)(6) arguments. We respectfully decline to dismiss the Complaint and address each argument below.

Glenmede was first appointed Trustee in 2004. At that time, our clients were 3, 5, 5, and 9 years old. The fundamental purpose of the Trusts was to preserve the family's wealth for future generations, including our clients. In the years that followed, Glenmede abdicated its most basic duties as Trustee. Glenmede let too much money leave the Trusts, let the money go to the wrong places, failed to identify conflicts of interest, failed to invest prudently, conduct proper accountings and keep proper records, and did not communicate any of this to our clients.

Glenmede distributed tens of millions of dollars more than it was permitted to distribute, in direct violation of binding trust rules, thereby draining the Trusts of the money from which our clients were to ultimately benefit. (*See, e.g.*, Compl. ¶ 25.) Glenmede distributed much of this money to an entity, Heartwell Holdings, that was completely controlled by David Epstein, which then allowed David to use the money in whatever way he saw fit, rather than subjecting the money to the dictates of the Trusts. (*See, e.g.*, Compl. ¶ 27.) Glenmede had the authority to remove David as the manager of Heartwell Holdings but never took any action to accomplish that. (*See, e.g.*, Compl. ¶ 26.) While David used money

from the Trusts as "his own personal playground," Glenmede also bungled the accounting records by, among other things, failing to document transfers and continuing to show assets that had been sold years prior. (*See, e.g.,* Compl. ¶¶ 30, 35.) And, when our clients turned twenty-five years old, Glenmede violated Ohio law by failing to send them required information about the Trusts.

Our clients were swindled by their own father. David Epstein engaged in misconduct that Glenmede, as Trustee, had a fiduciary duty to prevent. He essentially stole tens of millions of dollars from his children. Moreover, Glenmede distributed tens of millions of dollars too much to Sandra Price, their mother

This case background, all culled directly from the Complaint in this case, shows why Glenmede's arguments in support of dismissal are wrong: *because Sandra and David are the ones who benefited from Glenmede's misconduct to our clients' detriment, yet Glenmede argues that Sandra and David's role as parents of our clients nonetheless protected our clients' interests*. Thus, it is entirely unavailing to argue that our clients "benefited" from the overdistributions to Sandra because Sandra received distributions from the Trusts "for her benefit and that of the Plaintiffs." (Letter, p. 2.) This is also fundamentally why it is incorrect to argue that our clients' claims are barred by the state court litigation and settlement. Sandra (not our clients) brought an action for an accounting to figure out where all the money went (not to recover the money that is no longer there for our clients' benefit) and settled the manner by virtue of an agreement that explicitly carved out our clients' claims. And this is also why it is so misplaced to argue that our clients "either knew or should have known" about the investments into Heartwell Holdings "based on their mother and father expressly directing those investments." Not only is it factually incorrect that David and Sandra directed all of, and the extent of, those investments, but it is also odd to suggest that because the person stealing from them was their father, that they "should have known" that he was doing it. Our clients were betrayed by their father while their mother was being cut out from communications and decisions regarding the Trusts, while simultaneously benefiting from over-distributions by the Trusts. This is exactly the kind of misconduct that the Trusts were designed to prevent. Glenmede cannot escape liability for failing to guard the henhouse on the theory that the fox was doing it instead.

At its core, Glenmedes's letter ignores the specific factual allegations in the Complaint. For instance, our Complaint specifically alleges that Glenmede continued to serve as Trustee even after the forged terminations in 2019, and that the forged termination was therefore invalid. Your letter ignores this, assuming, contrary to our allegations, that the termination was in fact effective. As another example, your letter simply ignores that the Complaint alleges both bad faith, both generally, *see, e.g.*, Compl. ¶ 130, and with reference to specific facts, *see, e.g.*, Compl. ¶¶ 114-196. In short, the arguments offered in your letter fundamentally violate the basic tenets of Rule 12: our allegations (such as the bad faith

misconduct of Glenmede and the forged nature of the termination letter) must be accepted as true. Your letter rejects those facts which Glenmede is simply not allowed to do at this stage. Glenmede's proposed motion to dismiss, therefore, is entirely improper, and we urge you not to occupy the Court's time with such a motion.

**1. Plaintiffs Have Standing to Bring Their Claims**

Glenmede's assertion that Plaintiffs lack standing is without merit. As vested remainder/contingent and current beneficiaries, Plaintiffs have suffered concrete and particularized harm as a result of Glenmede's misconduct and have the right to bring their causes of action directly against Glenmede.

**A. Plaintiffs' Status as Beneficiaries of the Price Trusts Confers Standing Regardless of the Trustee's Discretion Over Distributions**

Plaintiffs have standing to bring their claims because they are vested remainder beneficiaries of five of the Price Trusts (the 1965 Trust, the 1991 Trust, the 1993 Trust, the 1996 GST Exempt Trust, and the 1996 Non-GST Exempt Trust), current beneficiaries of one of the Price Trusts (the 1976 Trust), and Glenmede's misconduct directly injured their legally protected interests in all six of the Price Trusts (the 1965 Trust, the 1976 Trust, the 1991 Trust, the 1993 Trust, the 1996 GST Exempt Trust, and the 1996 Non-GST Exempt Trust). To establish standing, a plaintiff must satisfy three elements. First, the plaintiff must have suffered an "injury in fact," which is defined as "an invasion of a legally protected interest." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (requiring an invasion of a legally protected interest to be concrete and particularized, and actual or imminent, not conjectural or hypothetical). Second, there must be causation. *Id*. ("[T]he injury has to be 'fairly...trace[able] to the challenged action of the defendant..."). Third, it must be likely that the injury will be redressable or remedied by the court. *Id*. Here, Plaintiffs satisfy all three elements.

Certain harms plainly qualify as concrete injuries for purposes of Article III. For instance, "[i]f a defendant has caused physical or monetary injury to the plaintiff, the plaintiff has suffered a concrete injury in fact under Article III." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 425 (2021). Here, Glenmede caused Plaintiffs their concrete monetary injuries. Plaintiffs allege various breaches that directly impaired their legally protected interests in the Price Trusts, including, but not limited to, excessive and improper distributions to Sandra that depleted the Price Trusts assets that were meant to be preserved for Plaintiffs as vested remainder beneficiaries; imprudent investments in Heartwell Holdings and other unsuitable vehicles; and broader mismanagement, resulting in the loss of Price Trust assets. Glenmede's misconduct and actions directly reduced the Price Trusts' corpus from which the Plaintiffs are entitled to benefit, which establishes a concrete injury sufficient to confer Article III standing. In addition, Plaintiffs' injuries are redressable or can be remedied by the

Court in this instant matter. A favorable decision would restore trust assets and remedy the diminution of the trust corpus from which Plaintiffs are entitled to benefit. Accordingly, here the Plaintiffs satisfy all elements of Article III standing.

Glenmede incorrectly asserts that Plaintiffs have no standing in this case, arguing that only "current beneficiaries" may sue and that remainder beneficiaries lack a cognizable injury until they are entitled to receive distributions. Ohio courts, however, have found otherwise. *See Papiernik v. Papiernik*, 45 Ohio St. 3d 337, 343–44, 544 N.E.2d 664, 670-71 (1989) ("We hold that…a remainderman holding a vested interest in a trust which is subject to defeasance…has standing…."); *Collins v. Flannery*, 2024-Ohio-5822, ¶54 (10th Dist.) (Edelstein, J., concurring) ("In the present case, appellees hold a vested remainder interest in the Surviving Spouse's Trust subject to complete defeasance. Accordingly, pursuant to the Supreme Court's holding in *Papiernik*, although they may not ultimately receive any assets following appellant's death, appellees had standing to maintain their action against her in the probate court."). Other jurisdictions similarly recognize that remainder beneficiaries have standing to enforce their trust interests. *See In re Est. of Cooper*, No. 02-23-00104-CV, 2024 Tex. App. LEXIS 1878, at *16 (Tex. App. Mar. 14, 2024) ("Alabama law provides remedies to beneficiaries affected by a trustee's breach of duty…and the term 'beneficiary' includes anyone who 'has a present or future beneficial interest in a trust, vested or contingent'…Texas also allows a contingent or vested beneficiary to sue a trustee for breach of fiduciary duty."); *Rachins v. Minassian*, 251 So. 3d 919, 923-926 (Fla. Dist. Ct. App. 2018) (holding that a contingent or vested or qualified beneficiary has standing to sue and challenge a trustee administering the trust corpus).

Lastly, the Court in *Collins* at ¶32 specifically found that Ohio's statutory provisions are relevant to the issue and determination of standing. The Ohio Trust Code states that "[a] trustee who commits a breach of trust is liable to the ***<u>beneficiaries</u>***…the amount required to restore the value of the trust property and trust distributions to what they would have been had the breach not occurred." R.C. 5810.02. Further, "[b]eneficiary" is defined as "a person that has a ***<u>present or future beneficial interest in a trust, whether vested or contingent</u>***." R.C. 5801.01(C) (emphasis added). In the instant matter, "[b]eneficiary" as defined by the Ohio Trust Code, includes the Plaintiffs. Thus, the Ohio Trust Code specifically states that remainder or contingent beneficiaries have a protected interest and cause of action when there is a breach of trust by a trustee causing a depletion or mismanagement of trust assets. The foregoing clearly demonstrates that (1) Plaintiffs maintain a legally protected interest; (2) that Glenmede was the cause of and responsible for the violation of their protected interest as alleged in Plaintiffs' Complaint; and (3) that Plaintiffs' concrete injury can be remedied and redressed by this Court. Here, the Ohio Trust Code is highly relevant and informative by demonstrating that Plaintiffs as remainder or contingent beneficiaries have standing to sue Glenmede in the instant matter.

### B. Plaintiffs May Assert Claims Directly Because Defendant Is Not a Third Party to the Price Trusts

Plaintiffs may assert their claims directly because Glenmede was never removed as Trustee of the Price Trusts and, therefore, is not a third party to the Price Trusts. No current trustee exists who could possibly bring these claims. The majority of the Price Trust assets are presently managed by a special fiduciary, which is distinct from a current trustee under Ohio law[1]. *See*, R.C. 5810.01. As a result, Plaintiffs are the proper parties to pursue these claims directly, and Glenmede cannot shield itself behind the notion that only a current trustee may sue. Glenmede cites to *Godfrey v. Kamin*, No. 99 C 3230, 2000 U.S. Dist. LEXIS 18213 (N.D. Ill. Dec. 13, 2000), which is a U.S. District Court for the Northern District of Illinois case, not binding precedent in the Sixth Circuit, inapplicable, and does not support dismissal here. In *Godfrey*, the Court addressed a narrow, derivative claim brought by contingent remainder beneficiaries under Illinois law, where it was undisputed that the prior trustee had been properly removed, that current trustees were in place, and that the plaintiffs in the matter alleged no refusal or inability by those trustees to pursue claims. *Id*. at *14.

By contrast, Plaintiffs here allege that Glenmede was never validly terminated as trustee because it failed to issue a final report to Plaintiffs at any time between 2019 and 2021, as required to effect termination under Ohio law, and therefore continued to owe fiduciary duties during that period. *See* Compl. ¶¶ 110–113. Plaintiffs further allege that all documents purporting to remove Glenmede as Trustee and appoint Peak Fiduciary LLC as Successor Trustee were illegitimate and without legal effect, because David lacked authority to unilaterally remove the Trustee or install a successor. *See* Compl. ¶ 91. In addition, Paragraph 205 of the Complaint alleges that "[a]s of today, Defendant has not been officially removed as Trustee of the Price Trusts, but the majority of the Price Trust assets have been transferred to the First Trust Company as special fiduciary" – further demonstrating that *Godfrey* is inapplicable. Compl. ¶ 205. Glenmede remains the Trustee of the Price Trusts pursuant to Ohio law and is not a third party. Therefore, Plaintiffs are the proper parties to pursue their claims directly.

*Assuming arguendo*, that Glenmede was actually removed as Trustee of the Price Trusts and is now a third party, *Godfrey* only articulates the rule that, in the ordinary case, the current trustee is the party that can prosecute claims against third parties that belong to the trust estate. The foregoing rule, however, has never been absolute, and *Godfrey* does not suggest otherwise. Numerous authorities recognize that the rule is inapplicable where adherence to it would frustrate a beneficiary's ability to enforce the duties owed by a former

---

[1] Pursuant to Ohio Trust Code, a "Special Fiduciary" is one that is appointed to take possession of the trust property and administer it when there has been a violation by a trustee of a duty that is owed. R.C. 5801.01(A); (B)(5).

trustee. For instance, in *Healey v. Mantell*, a Connecticut court confronted and rejected the same overextension of the rule on which Glenmede relies. There, the defendants argued that beneficiaries were improper parties because only a trustee may sue on behalf of a trust, citing a state supreme court decision articulating the rule that beneficiaries lack standing to sue third parties for liability to the trust. *See Healey v. Mantell*, No. X06UWYCV216060206S, 2021 Conn. Super. LEXIS 1237, at *15–16 (Conn. Super. Ct. July 16, 2021). The Court in *Healey* instead applied § 94 of the Restatement (Third) of Trusts, which provides that a suit "against a trustee of a private trust to enjoin or redress a breach of trust or otherwise to enforce the trust may be maintained only *by a beneficiary* or by a co-trustee, successor trustee, or other person acting on behalf of one or more beneficiaries." *Id*. at *15-16 (emphasis in original) (quoting Restatement (Third) of Trusts § 94). . Critically, the Restatement makes explicit that "[r]eferences in this Section to suits against trustees include suits against former trustees (or their estates) as appropriate to the context." Restatement (Third) of Trusts § 94 Consistent with that framework, the *Healey* court further noted that a beneficiary has standing if he can plead a fiduciary duty, its breach, and adverse financial impact, regardless of whether the trustee is current or former. *Healey*, 2021 Conn. Super. LEXIS 1237, at *16-17. ("[T]he court concludes that under the facts alleged in the Complaint, the plaintiffs have standing to sue the defendants for conduct that occurred while they were trustees of the subject trust.") Other courts have also reached similar holdings. *See Asaro v. Maniscalco*, 103 Cal. App. 5th 717, 734, 323 Cal. Rptr. 3d 275, 289 (Cal. Ct. App. 2024) ("A beneficiary has standing to sue a former trustee for breach of trust, even when a successor trustee is available to do so.") (citing *Estate of Bowles*, 169 Cal. App. 4th 684, 694, 87 Cal. Rptr. 3d 122, 128-129 (Cal. Ct. App. 2008)). Accordingly, *Godfrey* is not controlling law in Ohio, the Sixth Circuit, and is contradicted by courts in Ohio and throughout the country.

## 2. Plaintiffs' Claims Are Not Precluded or Barred by the February 2025 Settlement Agreement, Res Judicata, or Claim Preclusion

Glenmede's preclusion argument fails because it disregards the controlling principle that governs settlements: the scope of preclusion is defined by the intent of the settling parties, not by the mechanical application of the res judicata doctrine[2]. When determining whether the preclusive principles of res judicata apply to the terms of a settlement agreement, courts will first look to the agreement itself to determine what claims were

[2] The doctrine of res judicata consists of the two related concepts of claim preclusion and issue preclusion. *See Doe v. Bd. of Educ*., No. 1:22-cv-44, 2025 U.S. Dist. LEXIS 50746, at *6, 10 (S.D. Ohio Mar. 19, 2025). Claim preclusion prevents subsequent actions, by the same parties or their privies, based upon any claim arising out of a transaction that was the subject matter of a previous action, while issue preclusion, prevents the re-litigation of any fact or point that was determined by a court of competent jurisdiction in a previous action between the same parties or their privies. *See Doe ex rel. Doe v. Jackson Local Schs. Sch. Dist*., 422 F. App'x 497, 500 (6th Cir. 2011); *O'Nesti v. DeBartolo Realty Corp*., 113 Ohio St. 3d 59, 61, 2007-Ohio-1102, ¶ 6, 862 N.E.2d 803, 806 (2007).

resolved and which claims were preserved. *See Int'l Union v. Textron, Inc.*, No. 3:14 CV 2112, 2015 U.S. Dist. LEXIS 37797, at *7 (N.D. Ohio Mar. 25, 2015) ("The Court finds preclusion in the instant case rests upon the intent of the parties according to the Settlement Agreement, as opposed to strict federal res judicata principles."); *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288-1289 (11th Cir. 2004) (it is the intent of the parties that determines the scope of preclusion in context of a consent judgment based on settlement agreement); *Lucas v. JBS Plainwell, Inc.*, No. 1:11-cv-302, 2012 U.S. Dist. LEXIS 198181 at *2, 7, 18-19 (W.D. Mich. Mar. 8, 2012) (referring to the parties' intent as the key issue in determining the preclusive effect of a prior class-action settlement); *Keith v. Aldridge*, 900 F.2d 736, 740-41 (4th Cir. 1990) ("When a consent judgment entered upon settlement by the parties of an earlier suit is invoked by a defendant as preclusive of a later action, the preclusive effect of the earlier judgment is determined by the intent of the parties"..."***claim preclusion will not apply...if the parties intended to settle only one part of a single claim and intended to leave another part open for future litigation***") (emphasis added).

Here, the February 2025 Settlement Agreement (the "Settlement Agreement") expressly preserved Plaintiffs' independent rights and claims as current or remainder beneficiaries and permitted them to bring claims against Glenmede or any other party in the future. *See* Compl, ¶ 57, 203, 204; see also Settlement Agreement and Release attached hereto as **Ex. "A"**. It is clear by the plain language of the Settlement Agreement (provided below) that all parties to the state court probate litigation, *Sandra Price v. David M. Epstein*, et al., 2021ADV2840 (Lucas Cty. C.P., Probate Division 2021) (the "State Court Probate Litigation"), intended to carve out the Plaintiffs, so they could bring future claims against Glenmede or any other party to the Settlement Agreement.

> WHEREAS, David M. Epstein, Chase L. Epstein, Dawson W. Epstein (nka Dawson W. Price), Caroline J. Epstein, and Blake P. Epstein (nka Blake P. Price), were named as defendants in the Litigation, are represented by separate counsel and are expressly not Parties to this Agreement or in any way bound by this Agreement; and

> or could have been asserted in the Litigation. Notwithstanding the foregoing or any other provision of this Agreement, the Trust Parties are not authorized to and do not release or waive any claim that Chase L. Epstein, Dawson W. Epstein, Caroline J. Epstein, and Blake P. Epstein may have against the Parties or others.

(February 2025 Settlement Agreement and Release, p.1 and p.3)
(emphasis added).

The Settlement Agreement specifically states that "David M. Epstein, Chase L. Epstein, Dawson W. Epstein (nka Dawson W. Price), Caroline J. Epstein, and Blake P. Epstein (nka Blake P. Price)...***are expressly not Parties to this Agreement or in any way bound by this Agreement***..." and that "...***the Trust Parties are not authorized to and do not release***

***or waive any claim that Chase L. Epstein, Dawson W. Epstein, Caroline J. Epstein, and Blake P. Epstein may have against the Parties [including Glenmede] or others***." (Emphasis added). The foregoing language, carveout, and reservation of rights and claims for the Plaintiffs is dispositive, clearly demonstrates the intent of all parties to the Settlement Agreement, including Glenmede, and must preclude any application of res judicata principles in the instant matter pursuant to controlling law[3]. Further, it is important to note that none of the Plaintiffs are signatories to the Settlement Agreement. Simply put, a settlement that affirmatively carves out future beneficiary claims cannot simultaneously operate as a bar to those same claims[4].

It is also clear that Glenmede has failed to satisfy all of the elements of res judicata and claim preclusion. Pursuant to Ohio law, the elements of claim preclusion are as follows: (1) a prior final, valid decision on the merits by a court of competent jurisdiction; (2) a second action involving the same parties, or their privies, as the first; (3) a second action raising claims that were or could have been litigated in the first action; ***and*** (4) a second action arising out of the transaction or occurrence that was the subject matter of the previous action where there is an identity between the causes of action the first and second actions. *See Doe v. Bd. of Educ.*, 2025 U.S. Dist. LEXIS 50746 at *6, 10; *Andrena H. ex rel. A.S.H. v. Comm'r of the SSA*, No. 1:24-cv-00655, 2025 U.S. Dist. LEXIS 64059, at *5-6 (S.D. Ohio Apr. 3, 2025) (emphasis added). Here, Glenmede cannot satisfy at least three of the foregoing elements. First, the State Court Probate Litigation involved Plaintiffs' mother, Sandra, Plaintiffs' father, David, Glenmede, Peak Fiduciary LLC, and the Plaintiffs who were named as defendants in the matter solely because they maintained an interest in the Price Trusts. In the instant case, the only parties are the Plaintiffs and Glenmede, not Sandra, not David, nor Peak Fiduciary LLC ("Peak"). Therefore, clearly the parties or privies to the instant litigation are not the same as in the State Court Probate Litigation.

Next, the State Court Probate Litigation was an action by Sandra against David, Plaintiffs' father, to remove him as Trust Advisory Committee Member and Trust Advisor of the Price Trusts and for Sandra to receive formal accountings of the Price Trusts from David, Peak, and Glenmede. Thus, the purpose of Sandra's State Court Probate Litigation was to ensure that David had no future involvement with the Price Trusts and to understand the

---

[3] It is significant to note that the Settlement Agreement was entered into by Glenmede, Sandra Price ("Sandra"), and resolved Sandra's claims only. Importantly, Glenmede's letter does not cite to any Ohio law or case law that supports the notion or proposition that a trustee, special fiduciary, or aligned litigant is permitted to extinguish a non-party beneficiaries' causes of action absent clear authorization and intent particularly where, as here, the plain language of the Settlement Agreement does the opposite by preserving those non-party beneficiaries' claims.

[4] Glenmede previously agreed to a carveout and the reservation of rights and claims for the Plaintiffs pursuant to the Settlement Agreement in 2025, but now asserts res judicata principles because Plaintiffs have now actually asserted those specifically reserved claims. Clearly, Glenmede's actions are inequitable and in bad faith.

status or condition of the Price Trusts through the receipt of a formal trust accounting. It would have been impossible for the Plaintiffs who were defendants in the State Court Probate Litigation to bring claims against Glenmede during that litigation when they did not even have the formal accounting of the Price Trusts from the Trustee – Glenmede, until November of 2023, long after the matter had been filed[5]. *See* Compl, ¶ 199-201. Accordingly, Plaintiffs' causes of action in the instant matter could not have been filed or litigated in the State Court Probate Litigation because Plaintiffs did not possess the information and documents (the Glenmede formal accounting) that informed their allegations and causes of action in the instant matter.

Lastly, the present case against Glenmede does not arise out of the same transaction or occurrence that was the subject matter of the State Court Probate Litigation. In fact, there is no identity between the claims ***alleged by Sandra*** in the State Court Probate Litigation and the claims ***alleged by Plaintiffs*** in the present case. In the State Court Probate Litigation, Sandra was only seeking a formal accounting by Glenmede. Here, Plaintiffs have different interests and have alleged several facts, allegations, and causes of action ***directly against Glenmede***, including violations of the Ohio Trust Code, conversion, negligence, unjust enrichment, etc. due to the mismanagement of the Price Trusts, the inappropriate and improper investment of the Price Trusts in Heartwell Holdings, the overdistribution of funds of the Price Trusts, the improper and imprudent investment of the Price Trusts, etc. *See* Compl. ¶ 179-187, 114-130, 142-155, 167-178, 188-196. Specifically at issue in this matter is Glenmede's role in and responsibility for its failure to properly and appropriately administer the Price Trusts and to prudently manage the Price Trusts' funds. The foregoing operative facts, occurrences, and causes of action alleged against Glenmede in this matter are different, and were not at issue or litigated in the State Court Probate Litigation. As stated hereinabove, because Glenmede cannot satisfy all of the elements of its res judicata defense, it must fail.

Glenmede's res judicata and claim preclusion defense also collapses under its own internal contradictions. On the one hand, Glenmede insists that Plaintiffs were in privity with their mother in the 2021 State Court Probate Litigation and, therefore, are bound by the settlement and Settlement Agreement. On the other hand, Glenmede argues—at length—that Sandra is a necessary and indispensable party in the instant matter because of her alleged adverse conduct as a Trust Advisory Committee Member. Those positions cannot be

---

[5] In fact, it is specifically alleged in Plaintiffs' Complaint that Glenmede purposely delayed and did not provide any formal accounting for almost two years after the State Court Probate Litigation was filed and did not provide any formal accounting for over two years from Sandra's original request, until November of 2023. Even once provided, the accounting was incomplete and partial. *See* Compl. ¶ 200. Further, this delay in providing an accounting, and once provided, providing an incomplete and partial accounting, was meant to be purposely misleading regarding the status, health, performance, and administration of the Price Trusts. *See* Compl. ¶ 201.

reconciled. If Sandra is truly a necessary defendant who must be joined in this action, then Plaintiffs' interests are not aligned with Sandra's, and privity does not exist. Glenmede's Fed. R. Civ. P. 19 argument is also an implicit admission that Plaintiffs and their mother do not share a unity of interest sufficient to support res judicata/claim preclusion – or alternatively, that Fed. R. Civ. P. 19 does not apply. Glenmede cannot have it both ways.

Finally, Glenmede's invocation of Fed. R. Civ. P. 19 also provides no basis for dismissal. As an initial matter, Glenmede does not and cannot show that complete relief cannot be accorded among the existing parties. Plaintiffs seek redress for Glenmede's own breaches of fiduciary duty while acting as Trustee, including improper distributions, unauthorized and inappropriate investments, failures of administration, and concealment of trust activity. Those claims can be fully adjudicated as between Plaintiffs and Glenmede alone. Allegations that other actors may have participated in, benefited from, or contributed to the alleged misconduct do not render those actors indispensable. Joint tortfeasors and co-fiduciaries are not required parties under Fed. R. Civ. P. 19, and a plaintiff is entitled to proceed against one wrongdoer without naming all others who may share responsibility. *See, i.e.*, *Graham v. Ravenna S. & L. Co.,* No. 93-P-0021, 1993 Ohio App. LEXIS 6079, at *13 (11th Dist. Dec. 17, 1993) ("[A] joint tortfeasor, when sued alone, cannot object that the other tortfeasor was not made a party defendant, nor can he complain of the dismissal of the other from the action.") (quoting 73 Oh Jur Parties § 37). Glenmede's letter cites no legal authority to the contrary.

**3. Statute of Limitations**

Glenmede's argument that the case should be dismissed on statute of limitations grounds is wrong for three reasons:

(1) the two-year limitations period from R.C. 5810.05(A) is only triggered when a report that adequately discloses the existence of a potential claim is provided, and the Complaint makes clear that Glenmede never issued such a report; (2) it ignores or disputes factual assertions made in the Complaint regarding Glenmede's removal as trustee;

(2) the Complaint alleges facts that would establish that Glenmede was not removed as trustee in 2019 or 2021, thus the four-year period found in R.C. 5810.05(C)(1) was never triggered; and

(3) Glenmede's argument ignores or misapplies the discovery rule.

### A. The Two-Year Statute of Limitations Was Never Triggered

Glenmede first invokes the two-year limitations period in R.C. 5810.05(A), which is triggered only when a beneficiary is sent a report that (i) adequately discloses the existence of a potential claim for breach of trust and (ii) informs the beneficiary of the time allowed for commencing a proceeding. A report "adequately discloses" a potential claim only if it provides sufficient information so that the beneficiary knows of the claim or reasonably should have inquired into it.

Plaintiffs must admit to some confusion regarding the contents of your letter on this score. While Glenmede cites to R.C. 5810.05(A)'s two-year statute of limitations, it immediately proceeds to argue that the four-year statute of limitations found in 5810.05(C) was violated. Only later does Glenmede return to the two-year statute of limitations found in Subsection (A), in the context of First Trust being "appointed as Special Fiduciary to the trusts in February 2023 – more than two years before Plaintiffs filed their lawsuit." But, of course, Subsection (A)'s two-year statute only applies once the beneficiaries are "sent a report that adequately discloses the existence of a potential claim for breach of trust and informs the beneficiary, or the beneficiary surrogate of the time allowed for commencing a proceeding against a trustee." Nothing about the appointment of First Trust as a Special Fiduciary satisfies Subsection (A)'s trigger, and Glenmede makes no argument that it does.

This is the only portion of Glenmede's letter that seeks to invoke the two-year, rather than the four-year, statute, presumably because Glenmede acknowledges that there is no legitimate argument for application of the two-year statute, in light of the Complaint's allegations that Glenmede failed for years to provide a formal accounting, delayed disclosure despite repeated requests, and ultimately produced an accounting that was incomplete and misleading. Compl. ¶¶ 197–201. Plaintiffs further allege that millions of dollars in transfers were not disclosed or remain unaccounted for. Compl. ¶¶ 182–187. Nothing in the Complaint alleges that Plaintiffs were ever sent a report that both disclosed the existence of the breaches now alleged and advised them of the limitations period. Accordingly, R.C. 5810.05(A) is inapplicable on the face of the pleadings.

### B. Glenmede Was Not Removed as Trustee in 2019 or 2021

In considering the triggering of the four-year statute of limitations found in Subsection (C), a return to the statutory text is once again informative. The four-year limitations period begins to run "after the first of the following occur:

(1) The removal, resignation, or death of the trustee;
(2) The termination of the beneficiary's interest in the trust;
(3) The termination of the trust;
(4) The time at which the beneficiary knew or should have known of the breach of trust.

Glenmede makes no argument, of course, that either (2) or (3) apply, nor could it. Thus, the questions for the Court would be when (1) or (4) were triggered.

Glenmede incorrectly argues that (1) was triggered because "Glenmede had been removed as Trustee . . . more than four years before the filing of the Complaint in this case." That argument ignores the allegations of the Complaint. The Complaint alleges that Glenmede was never validly terminated as trustee during the relevant period. All documents purporting to remove Glenmede as trustee and appoint Peak Fiduciary as successor were illegitimate and without legal effect because David lacked authority to unilaterally remove the trustee or appoint a successor. Compl. ¶ 91. And Plaintiffs specifically allege that "[a]s of today, Glenmede has not been officially removed as Trustee of the Price Trusts, but the majority of the Price Trust assets have been transferred to the First Trust Company as special fiduciary." Compl. ¶ 205. Your letter does not refute these allegations (nor could it, in discussion of a Rule 12 motion), nor does it contend that, despite these allegations, the limitations period was nevertheless triggered. Rather, your letter simply ignores these allegations

In addition, as the Complaint alleges, Glenmede continued to operate as the Trustee; Glenmede remained in possession of the Trusts' assets, continued to perform some of its duties as Trustee in the ordinary course, and never issued a final termination report. Compl. ¶ 90. At most, your argument raises a factual dispute about whether Glenmede was terminated; a factual dispute that would be improper to resolve even on a motion for summary judgment, let alone a Rule 12 motion. Accepting these allegations as true, however, causes Glenmede's limitations argument to fail. If presented with this issue, we believe that the Court will apply the proper Rule 12 standard and reject Glenmede's limitations argument.

**C. Glenmede Misapplies the Discovery Rule**

Finally, Glenmede raises the argument under Subsection (C)(4) that Plaintiffs "knew or should have known" of the breach of trust more than four years before the filing of the Complaint in this case. Glenmede's argument here also fails.

For starters, Glenmede's argument bounces back and forth between ignoring, and purporting to incorporate, the discovery rule. For instance, on page 7 of your letter, you state that "the Complaint and its attached Exhibits demonstrate that the claims asserted against Glenmede relate to events between 2006 and 2019, making [various of Plaintiffs' claims] time-barred." But the timing of the *events* underlying the claims is of no moment here, given the various bases for tolling of the limitations period. Most notably, that is the fact that Glenmede's misconduct had not yet been discovered. But it also includes concerns such as the fact that Plaintiffs were minors for much of the period in question.

*To date*, the full scope of Glenmede's misconduct is not fully known to Plaintiffs. Glenmede's argument that its misconduct was known or should have been known to Plaintiffs more than four years before the initiation of this lawsuit fails for the simple reason that it is inconsistent with the facts alleged in the Complaint. Indeed, the Complaint alleges that even Sandra did not receive a formal accounting until November, 2023 (and even then, it was incomplete). Compl. ¶ 200.

Glenmede's limitations argument appears to be based on the fundamentally flawed conclusion that *any* information provided *to David or Sandra* is sufficient to establish that Plaintiffs here knew or should have known of *all* Glenmede's misconduct. Of course, the conclusion does not follow from the premise. For instance, Glenmede asserts: "The **Plaintiffs** either knew or should have known about the investments made into Heartwell Holdings **based on their mother and father expressly directing those investments**, **based on their mother and father's actual knowledge** of those investments, based on **the Glenmede statements** expressly listing those investments, *see, e.g.*, the 2012 and 2020 statements are attached to the Complaint as Exhibits K and L, and **based on the information that was available to them and their mother and father** as members of the Trusts' Advisory Committee." Their father was actively concealing the misconduct here – forging documents and the like. Their mother was being cut out of the picture by Glenmede and David, was not receiving appropriate accounting records from Glenmede, AND was benefiting from over-distributions. *See* Compl. ¶¶ 167-178. Plaintiffs can neither find nor conceive of any legal authority suggesting that Plaintiffs knew or should have known of Glenmede's misconduct under such circumstances, nor does Glenmede's letter supply any.

Indeed, the case law on which Glenmede relies is inapplicable. Unlike *Hammon v. Huntington Nat'l Bank*, 102 N.E.3d 1248, 1263 (Ohio Ct. App. 2018), where the beneficiaries were expressly told that the investments had failed and simply waited years to sue, Plaintiffs here allege that Glenmede concealed material information, delayed providing any formal accounting for years, and produced an accounting only after court intervention—and even then provided one that was partial and misleading. Compl. ¶¶ 197–201. Plaintiffs also allege that significant transfers and losses were not disclosed and remain unexplained. Compl. ¶¶ 182–187. These allegations support application of the discovery rule and equitable tolling and preclude a determination, as a matter of law, that Plaintiffs knew or should have known of the specific breaches now alleged more than four years before suit.

Glenmede's reliance on the 2021 action is likewise misplaced. The Complaint alleges that the 2021 action was precipitated precisely because Glenmede failed to provide a timely and complete accounting, and that even after the appointment of a special fiduciary, full and accurate information about the Trusts' administration was not promptly or completely disclosed. Compl. ¶¶ 197–203. Participation in proceedings seeking information and oversight does not equate to knowledge of the specific breaches later uncovered, nor does

it trigger limitations where the trustee's alleged misconduct includes an ongoing pattern of concealment and incomplete disclosure.

While Glenmede's letter also cites to *Cundall v. U.S. Bank*122 Ohio St. 3d 188, 192-93, 2009-Ohio-2523, ¶ 21–23, 909 N.E. 2d 1244, 1249 (2009) on this issue, that case is similarly distinguishable. In *Cundall*, the court held that plaintiff's claims were time-barred because the Complaint itself alleged that the beneficiaries knew of the alleged wrongdoing at the time it occurred: they knew the price paid for the stock, knew the price at which they sold it, and were aware of the alleged coercion and "transparent" subterfuge in 1984. *Id.* at ¶ 31-35. On the face of the pleadings, there was no concealment, no delayed discovery, and no factual dispute as to when the beneficiaries recognized that they might have claims. *Id.*

This case presents a much different posture. Plaintiffs do not allege all overt, immediately recognizable misconduct; they allege delayed and incomplete accountings, concealment of material information, unexplained transfers, and breaches that were not and could not have been fully known until years later.

**4. The Exculpatory Clauses Do Not Shield Glenmede from Liability for the Conduct Alleged in the Complaint**

Glenmede's reliance on the Trust exculpatory clauses and R.C. 5815.25(C) fundamentally mischaracterizes both the scope of those provisions and the nature of Plaintiffs' claims.

**A. Exculpatory Clauses Cannot Shield Bad Faith, Willful Misconduct, or Reckless Indifference**

The exculpatory clauses Glenmede relies upon contain an express good faith requirement that defeats its own argument. The Trust language provides that "[t]he Trustee shall not be liable for nor charged with any act or thing done or omitted to be done **in good faith** and upon the direction or with the consent or ratification of the Advisory Committee." (emphasis added). Conduct that lacks good faith falls outside the protection of the exculpatory clause on its face, without even reaching the statutory limitations.

Ohio law reinforces this limitation. R.C. 5810.08 provides that a "term of a trust relieving a trustee of liability for breach of trust is unenforceable to the extent that it relieves the trustee of liability for breach of trust committed in bad faith or with reckless indifference to the purposes of the trust or the interests of the beneficiaries or was inserted as the result of an abuse by the trustee of a fiduciary or confidential relationship to the settlor." Even if the terms of the trust attempt to completely exculpate a trustee for the trustee's acts, the trustee must always comply with a certain minimum standard. A trustee must always act in good faith with regard to the purposes of the trust and the interests of the beneficiaries.

Plaintiffs' Complaint alleges conduct that falls squarely within this exception. Glenmede: (1) invested approximately $20 million more than the TAC directives limited; (2) invested three trusts in Heartwell Holdings without any TAC authorization whatsoever; (3) accepted and relied upon forged documents; (4) distributed over $23 million to Sandra while exercising sole discretion; and (5) failed to exercise any independent oversight over trust assets for nearly two decades.

This was not mere negligence or poor judgment, as the Complaint alleges, it was a pattern of conduct driven by self-interest. Glenmede profited while allowing David Epstein to treat Heartwell Holdings as his "personal playground and bank account," to the severe detriment of Plaintiffs. Glenmede ignored the fundamental conflicts of interest, watched as assets disappeared or were double-counted (at one point overstating the Price Trusts by $45.6 million), and continued collecting fees throughout.

A trustee that enriches itself while turning a blind eye to the systematic misappropriation of trust assets is not acting in good faith - it is acting in bad faith and with reckless indifference to the beneficiaries' interests.

Even Glenmede's own cited authority, *Newcomer v. Nat'l City Bank*, 2014-Ohio-3619, ¶ 54, 19 N.E.3d 492, 503-04 (Ohio Ct. App.), acknowledges that exculpatory clauses in Ohio trusts do not protect against "bad faith," "willful default," or "reckless indifference." The other two cases cited by Glenmede for this argument are inapplicable. *Goss v. USA Cycling*, 2022-Ohio-2500, 193 N.E.3d 599 (Ct. App.) involved a voluntary liability waiver signed by a participant in a recreational cycling event - not the fiduciary duties owed by a professional trustee to trust beneficiaries under Ohio's Trust Code, which imposes heightened obligations that cannot be waived through exculpatory language. Similarly, *Ram Int'l, Inc. v. ADT Sec. Servs.*, 555 F. App'x 493 (6th Cir. 2014) is inapposite because it involved a commercial security contract between two businesses under Michigan law - not the fiduciary relationship between a trustee and trust beneficiaries governed by Ohio's Trust Code. No Ohio court has permitted an exculpatory clause to shield a trustee from liability for conduct of the type alleged here.

### B. Glenmede Exceeded the Scope of TAC Authorization by $20 Million

The exculpatory clauses protect Glenmede only when acting "in good faith and upon the direction" of the Advisory Committee. The 2006 TAC Directives authorized specific investment limits:

1965 Trust: up to $3,200,000 (Compl. ¶132; Exhibit H, p. 1.)
1976 Trust: up to $1,000,000 (Compl. ¶135; Exhibit H, p. 3.)
1993 Trust: up to $9,000,000 (Compl. ¶137; Exhibit H, p. 4.)

Glenmede massively exceeded every one of these limits. Approximately $15,523,237 was invested from the 1965 Trust (exceeding the limit by $12,323,237); approximately $9,442,399 was invested from the 1976 Trust (exceeding the limit by $8,442,399); and the 1993 Trust exceeded its $9,000,000 limit by investing up to $9,767,578 during certain periods. Compl. ¶¶ 133, 136, 138. In total, Glenmede invested approximately $20,000,000 over the limits set by the TAC directives. Because these investments exceeded the scope of any TAC direction, the exculpatory clause provides no protection. Glenmede was not following a direction; it was violating one.

### C. Glenmede Invested Three Trusts in Heartwell Holdings With No TAC Direction Whatsoever

Glenmede invested over $14 million from three trusts - the 1991 Trust, the 1996 GST Exempt Trust, and the 1996 Non-GST Exempt Trust - in Heartwell Holdings entirely at its own sole discretion, without any TAC directive.

1991 Trust: approximately $5,810,991 invested with no TAC authorization. Compl. ¶ 150.

1996 GST Exempt Trust: approximately $390,263 invested with no TAC authorization. Compl. ¶ 151.

1996 Non-GST Exempt Trust: approximately $8,184,142 invested with no TAC authorization. Compl. ¶ 152.

The exculpatory clauses only apply when the Trustee acts "upon the direction or with the consent or ratification of the Advisory Committee." Where there is no direction, there is no protection. Glenmede cannot claim it was following TAC directions when it admits no such directions existed for these three trusts.

### D. Distribution Decisions Were Within Glenmede's Sole Discretion - No TAC Protection Applies

For the $23,078,666.01 in distributions to Sandra, Glenmede cannot invoke the exculpatory clauses because the TAC had no authority over distributions for four of the six trusts, and was disqualified from distribution decisions for the remaining two.

For the 1991 Trust, 1993 Trust, 1996 GST Exempt Trust, and 1996 Non-GST Exempt Trust, the Trust Advisory Committee members "do not have any ability to effectuate distributions to beneficiaries or otherwise, as the power and discretion resides only with the Trustee." Compl. ¶ 78. The exculpatory clause protecting Glenmede for acting on TAC directions is simply inapplicable to these distributions.

For the 1965 Trust and 1976 Trust, while the TAC has some authority over distributions, any TAC member "who would directly or indirectly benefit from such distributions is disqualified from participating in distribution decisions." Compl. ¶ 77. Because both Sandra and David would benefit from distributions, they were disqualified, "leaving such discretion entirely to Defendant as Trustee." When Glenmede made distribution decisions in its sole discretion the exculpatory clause provides no shield.

### E. Glenmede Retained Independent Duties That Cannot Be Delegated Away

Even when acting on TAC directions, a trustee retains baseline fiduciary duties that cannot be eliminated by exculpatory provisions. As Trustee, Glenmede "retained ultimate decision-making authority over such investments under the Price Trusts' trust agreements." Compl. ¶ 141.

The Trusts themselves provide that "[t]he Trustee has no obligation to follow written directions from the Trust Advisory Committee that request actions beyond the TAC's authorized powers. In such circumstances, the Trustee must exercise independent discretion and act prudently in the best interests of the Price Trusts." Compl. ¶ 73.

Glenmede had a fiduciary duty to refuse to implement directions that were clearly imprudent, that exceeded the scope of authorized limits, or that were based on forged documents. Under Ohio law, a trustee has a fiduciary duty to act in the best interests of the beneficiaries and to administer the trust prudently, in good faith, and in accordance with its terms and purposes. R.C. 5808.01. Its wholesale abdication of oversight - allowing David Epstein to use Heartwell Holdings as his "personal playground and bank account" while collecting fees - cannot be excused by pointing to exculpatory language.

### F. The 2017 Ratification Was Forged and Therefore Invalid

Glenmede's letter suggests the 2017 Advisory Committee ratification provides an independent defense. It does not. The Complaint alleges that David forged Sandra's signature on the 2017 TAC directive and the Amended Operating Agreement. Compl. ¶ 162.A forged ratification is no ratification at all. Glenmede cannot bootstrap protection from a document it knew or should have known was fraudulent.

The Complaint alleges that Glenmede acted outside the scope of any TAC direction, exceeded authorized limits by tens of millions of dollars, exercised sole discretion over distributions, relied on forged documents, and acted with reckless indifference to the beneficiaries' interests. None of this conduct is protected by the exculpatory provisions.

**5. Count-Specific Arguments**

**A. Counts Seven, Ten, and Twelve Do Not Fail as a Matter of Law and Should Not be Dismissed**

**i. Plaintiffs' Count Seven Response**

With regard to Glenmede's argument that Plaintiffs' Count Seven (Breach of Trust) fails as a matter of law, this assertion is baseless. First, Glenmede cites to the wrong statute (R.C. 5803.13(A)) when it should be citing to R.C. 5808.13(A). Second, R.C. 5808.13(A) and 5808.13(C), state as follows: "A trustee shall keep the current beneficiaries of the trust reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests..." and "[a] trustee of a trust shall send to the current beneficiaries, ***and to other beneficiaries who request it, at least annually and at the termination of the trust, a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values***". *See* R.C. 5808.13(A), (C). Further, Plaintiffs dispute that Glenmede is no longer Trustee of the Price Trusts, including the 1976 Trust, and only a "Special Fiduciary" has been appointed pursuant to R.C. 5801.01(A), (B)(5). Plaintiffs in their Complaint have stated and alleged that they are current beneficiaries of the 1976 Trust and that Sandra has exercised her power of appointment making them so. *See* Compl. ¶¶ 47. To date, Glenmede has still not provided Plaintiffs with a reporting or accounting of the Price Trusts, including the 1976 Trust, as defined by the plain language of R.C. 5808.13(C) ("...a report of the trust property, liabilities, receipts, and disbursements, including the source and amount of the trustee's compensation, a listing of the trust assets, and, if feasible, the trust assets' respective market values...") and detailed at Compl. ¶¶ 241. Accordingly, Count Seven does not fail as a matter of law and cannot be dismissed.

**ii. Plaintiffs' Count Ten Response**

Defendants are also incorrect in their assertion that Count Ten (Conversion) fails as a matter of law. Pursuant to Ohio law, conversion is defined as the "wrongful exercise of dominion over property in exclusion of the right of the owner...". *See Roy's Travel Bureau, Inc. v. Inspire Travel Grp., LLC*, No. 5:25-cv-1427, 2025 U.S. Dist. LEXIS 200915, at *5 (N.D. Ohio Oct. 10, 2025) (quoting *Zacchini v. Scripps-Howard Broad. Co.*, 47 Ohio St. 2d 224, 226, 351 N.E.2d 454, 457 (1976)) (citation modified), *rev'd on other grounds, Zacchini v. Scripps-Howard Broad. Co.*, 433 U.S. 562 (1977). In Glenmede's letter, it appears that Defendant is attempting to make the argument that it did not "technically" commit acts of conversion because the money that was entrusted to Glenmede as Trustee of the Price Trusts was not "specifically earmarked" or "capable of identification". Glenmede also argues that Plaintiff

only made "generic allegations that the trust proceeds were improperly invested and distributed" and did not identify the money earmarked for Plaintiffs. Glenmede's assertions are patently false. In Plaintiffs' Complaint, it is alleged in detail that Glenmede "...invested the Price Trusts in Heartwell Holdings and continuously violated...Trust Advisory Committee directives that limited the investment amounts in Heartwell Holdings..." (showing dominion over certain property or assets) and specified the amounts that were improperly invested and overinvested. *See, eg.*, Compl. ¶¶ 120, 125, 130-131, 132-141, 150-155.. In the Complaint, Plaintiffs also alleged their interest in these assets or monies. *See, eg.*, Compl. ¶¶ 45-53, 55-56, 125, 130, 140, 155. Thus, Plaintiffs have successfully pled a cause of action for conversion.

Further, in Plaintiff's Complaint, it is specifically alleged that "[t]he 2020 annual account statement for Heartwell Holdings reveals $8,806,778 in transactions that were supposedly transferred to "The Glenmede Trust Company[]"...[n]one of these assets were transferred to the beneficiaries of the Price Trusts or to the Price Trusts' accounts...[t]he current whereabouts of these assets are unknown...". Compl. ¶¶ 182. Accordingly, the above allegation states that a specific sum of money ($8,806,778) was supposedly transferred to "The Glenmede Trust Company[]", where they exercised dominion over that money, that the beneficiaries of the Price Trusts did not receive it, and that the monies' whereabouts are unknown. The foregoing serves as another example of Glenmede's "self-dealing and misappropriation of the Price Trusts' funds", which is a plain act of conversion pled by Plaintiffs. Compl. ¶¶ 257.

Lastly, throughout Plaintiffs' Complaint, it is specifically alleged that Glenmede improperly distributed and overdistributed Price Trust monies; that Glenmede exercised dominion or control over those funds; and Plaintiffs' interest in those monies. Compl. ¶¶ 24, 56, 81-83, 167-178, 181-187. Importantly, at Compl. ¶ 178, it is stated and alleged that "[a]s a result of Defendant's actions, Plaintiffs' respective beneficial interests in the Price Trusts were unreasonably diminished". Therefore, it is clear that Plaintiffs have alleged in detail that the improperly distributed and overdistributed Price Trust monies, which were directed and facilitated by Glenmede, detrimentally impacted Plaintiffs' respective beneficial interests in the Price Trusts. Accordingly, it is clear that the Plaintiffs' have sufficiently alleged that Glenmede's actions and wrongdoing impacted Price Trust monies that were "earmarked" for the Plaintiffs. Here, Plaintiffs' have alleged several specific acts of conversion by Glenmede where Defendant wrongfully exercised dominion over property in exclusion of the right of Plaintiffs. As a result, there is no basis for dismissal of Count Ten of the Complaint.

**iii. Plaintiffs' Count Twelve Response**

There is no evidence to support that there is an expressly valid and/or enforceable contract between Glenmede and Plaintiffs or the "parties" as suggested by Glenmede as part of its Count Twelve (Unjust Enrichment) argument. Plaintiffs demand a copy of this

alleged contract for inspection and review. Regardless, it is the law in Ohio that a claim for unjust enrichment may proceed even when there is an express contract, if the party against whom the claim is made or asserted acted in bad faith[6], fraud, or illegality. *See White v. Wells Fargo Bank, NA*, 904 F. Supp. 2d 756, 767 (N.D. Ohio 2012) (citing *Credit Gen. Ins. Co. v. Marine Midland Bank, N.A.*, No. C-3-86-561, 1992 U.S. Dist. LEXIS 22747, at *57 (S.D. Ohio Aug. 24, 1992)); *see also Salerno v. Fam. Heritage Life Ins. Co*., No. 1:23-CV-01419, 2025 U.S. Dist. LEXIS 49831, at *8 (N.D. Ohio Mar. 19, 2025) (holding that a party to an express contract can bring a claim for unjust enrichment when there is a fraud or illegality). In the instant matter, Plaintiffs have alleged throughout their Complaint that Glenmede acted in bad faith and with illegality by *inter alia*, permitting the unauthorized and improper investment of the Price Trusts in inappropriate investments, the overdistribution of funds of the Price Trusts, failures of administration, concealment of trust activity, etc. *See* Compl, ¶ 19, 23-24, 26, 28, 35, 42, 114-130, 142-155, 156-166, 167-178, 179-187, 188-196. As a result, here, Plaintiffs have complied with Ohio law, have asserted and alleged a valid claim for unjust enrichment, and there is no basis for its dismissal.

**6. Conclusion**

For the reasons set forth above, Glenmede's anticipated Rule 12(b)(6) motion is fundamentally flawed and should not be filed.

At its core, Glenmede's position asks this Court to ignore the factual allegations in the Complaint and to rewrite the terms of the Settlement Agreement that Glenmede itself negotiated and signed. Glenmede cannot have it both ways: it cannot argue that Plaintiffs lack standing while simultaneously insisting they are bound by a settlement from which they were expressly excluded. It cannot claim the protection of exculpatory clauses while the Complaint alleges conduct undertaken in bad faith, with reckless indifference, in violation of specific directives, and in reliance on forged documents. And it cannot argue that limitations have run when the Complaint alleges that Glenmede was never properly removed as Trustee, never provided adequate disclosure, and actively concealed its misconduct for years.

The Price children were entitled to have their interests protected. Instead, Glenmede allowed their father to systematically drain the Trusts while their mother received over-distributions, all while Glenmede collected fees and failed to perform its most basic fiduciary obligations. The fact that a wrongdoer was the beneficiaries' own father makes Glenmede's duty more critical, not less. These Trusts existed precisely to prevent this type of harm.

---

[6] Courts have determined that "bad faith" is "…that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *See Master Chem. Corp. v. Inkrott*, 55 Ohio St.3d 23, 28, 563 N.E.2d 26, 31 (1990) (quoting *Smith v. Halverson*, 273 N.W.2d 146, 150-151 (S.D. 1978)).

Glenmede's proposed motion would require the Court to adopt facts contrary to those alleged, disregard express contractual language preserving Plaintiffs' claims, and apply legal standards inconsistent with Ohio law and Sixth Circuit precedent. Such a motion would not only be meritless, but it would also needlessly consume the Court's resources and delay resolution of claims that deserve to be heard on their merits.

We strongly urge you to reconsider filing this motion. If, however, Glenmede proceeds, we are fully prepared to vigorously oppose it.

We remain available to discuss a productive path forward that does not require the Court's intervention on threshold issues that lack merit.

Sincerely,

David P. Meyer